**In the Matter of L.A.S.**

No. 2–03–191–CV.

Court of Appeals of Texas,
Fort Worth.

April 22, 2004.

910

**912**

Law Offices of Wes Dauphinot, P.C., Wes Dauphinot, Fort Worth, for Appellant.

Tim Curry, Crim. D.A., Charles M. Mallin, Asst. Crim. D.A. and Chief of the Appellate Division, Anne E. Swenson, David M. Curl, Rebecca McIntire, Asst. Crim. D.As., Forth Worth, for Appellee.

Panel B: HOLMAN, GARDNER, and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

This is a juvenile appeal from an adjudication of delinquent conduct. The juvenile court found that L.A.S. engaged in delinquent conduct by coercing, soliciting, or inducing gang membership and by engaging in organized criminal activity and placed him one years' probation. In four points, L.A.S. challenges the legal and factual sufficiency of the evidence to support the juvenile court's judgment of delinquency. We will reverse and remand.

### II. BACKGROUND FACTS

On March 13, 2003, while J.A. walked home from school, a group of approximately seven young men approached him near the 300 block of West Randol Mill in Arlington, Texas. One of the young men asked if J.A. wanted to become a member of the Mexican Klan Locos ("M.K.L."), a criminal street gang. In response, J.A. declined the invitation and told the young man that he believed becoming a member of the M.K.L. gang was "gay."[1] The young man immediately relayed J.A.'s answer to the other young men, and the group encircled J.A. to prevent him from walking away. J.L.M., L.A.S.'s cousin, hit J.A. with a belt, and some of the boys in the circle hit him with closed fists. J.A. eventually escaped the circle, outran his attackers, and entered a nearby vehicle inspection station, where Samir Benedir, a

---

1. At the hearing, J.A. indicated that he was speaking through an interpreter because he was more comfortable speaking Spanish. When the interpreter translated the word "gay," he recognized that "queer" was another way of interpreting what J.A. had said.

station employee, telephoned the police to report the incident.[2]

Officer Chris Holder, a police officer for the City of Arlington, received a dispatch call to proceed to the scene of J.A.'s assault. As Officer Holder traveled towards the scene, he learned that J.A.'s assailants were heading southbound on Oak Street from Randol Mill and were dressed in white T-shirts and blue jeans. While traveling northbound on Oak Street, Officer Holder spotted four individuals—L.A.S., J.L.M., an unidentified male, and an unidentified female walking at or around the 800 block of Oak Street. According to Officer Holder, as he approached the four individuals, he observed that the three males in the group matched the description of J.A.'s assailants because they were all wearing white T-shirts and jeans. As the four individuals noticed the approaching police vehicle, they turned around and walked in the opposite direction. Officer Holder immediately exited his vehicle, asked the four individuals to stop, and told them that they were not free to leave.

While detaining the individuals, Officer Holder asked L.A.S. for his name and his birthdate. According to Officer Holder, L.A.S. turned and spoke Spanish to J.L.M. L.A.S. then gave Officer Holder a false name and birthdate. Because Officer Holder suspected that L.A.S. was being untruthful concerning his identity, he asked L.A.S. to provide some type of identification with his name on it. In response, L.A.S. handed Officer Holder a T-shirt with a name written on it, but the name was not the name he provided to Officer Holder. When Officer Holder asked him if the name on the T-shirt was his actual name, L.A.S. refused to answer and called

Officer Holder profane names. Shortly thereafter, Officer Brian Gillis, a School Resource Officer for the City of Arlington, identified L.A.S.,[3] giving his proper name to police, although L.A.S. attempted to prevent him from doing so by covering his face. Officer Holder determined that probable cause existed to believe that L.A.S. participated in J.A.'s assault and that the assault was gang-related, so he arrested L.A.S.

## III. STANDARD OF REVIEW

██ Fundamental due process requires that criminal responsibility for an offense be proved beyond a reasonable doubt. U.S. CONST. Amend. XIV; *Alvarado v. State*, 912 S.W.2d 199, 206–07 (Tex. Crim.App.1995) (citing *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970)). When juvenile appellants complain that the evidence is legally insufficient to support an adjudication of delinquency, we apply the criminal standard of review, which is more stringent than the "no evidence" standard applicable in civil cases. *In re J.D.P.*, 85 S.W.3d 420, 422 (Tex.App.-Fort Worth 2002, no pet.). The relevant question is not whether there was any evidence to support a state-court conviction, but whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). In reviewing the legal sufficiency of the evidence under the criminal standard, we view all the evidence in the light most favorable to the judgment in order to determine whether any rational trier of fact could have found the essential

2. The vehicle inspection station is located at 302 West Randol Mill. According to Benedir, Oak Street runs along the side of the station and is located approximately 100 feet from the building.

3. Officer Gillis came onto the scene as Officer Holder was attempting to identify L.A.S. Because Officer Gillis worked in junior high schools in the area, Officer Holder asked if he could identify L.A.S.

elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Burden v. State*, 55 S.W.3d 608, 612 (Tex.Crim.App.2001). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Our duty is not to reweigh the evidence from reading a cold record but to act as a due process safeguard ensuring only the rationality of the fact finder. *Williams v. State*, 937 S.W.2d 479, 483 (Tex.Crim.App.1996). Consequently, we will not disturb the fact finder's decision unless it is irrational or unsupported by a "mere modicum" of the evidence. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

 In determining the legal sufficiency of the evidence and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App.1991). The standard of review is the same for direct and circumstantial evidence cases. *Burden*, 55 S.W.3d at 613; *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex.Crim.App. 1999).

 We also apply the criminal factual sufficiency standard of review to appeals from juvenile adjudications. *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex.App.-Fort Worth 2002, no pet.). Therefore, in reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Clewis v. State*, 922 S.W.2d 126, 129, 134 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the judgment, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* In performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis*, 922 S.W.2d at 136. We may not substitute our judgment for that of the fact finder's. *Johnson*, 23 S.W.3d at 12. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 9, 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

 To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required. *Johnson*, 23 S.W.3d at 12. A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim.App.2003).

## IV. SUFFICIENCY OF THE EVIDENCE UNDER SECTION 22.015

In his first two points, L.A.S. contends that the evidence is legally and factually insufficient to support his adjudication under section 22.015 of the Texas Penal Code because the State failed to connect him, either as a primary actor or under the law of parties, to the offense of coercing, soliciting, or inducing gang membership. The State maintains that the evidence is sufficient to support the juvenile court's adjudication findings because the combined and

cumulative force of all the incriminating circumstances clearly link L.A.S. as a party to the offense of coercing, soliciting, or inducing gang membership.

### A. The Law

Pursuant to section 22.015 of the Texas Penal Code, a person commits an offense if, with intent to coerce, induce, or solicit a child younger than seventeen years of age to actively participate in the activities of a criminal street gang,[4] the person threatens the child with imminent bodily injury or causes bodily injury to the child. TEX. PENAL CODE ANN. § 22.015. In Texas, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a). Under the law of parties, the State may enlarge a person's criminal responsibility to acts in which he may not be the primary actor if such person, acting with intent to promote or assist the commission of the offense, solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(1)-(2).

 As in criminal cases, the juvenile court may utilize the law of parties in proceedings if the evidence presented supports the theory despite the absence of such allegation in the State's petition. *In re O.C.,* 945 S.W.2d 241, 244–45 (Tex.App.-San Antonio 1997, no writ); *see also In re S.D.W.,* 811 S.W.2d 739, 748–49 (Tex.App.-Houston [1st Dist.] 1991, no writ) (recognizing that State need not plead law of parties because it is an evidentiary matter). The evidence is sufficient to support a conviction under the law of parties where the accused is physically present at the commission of the offense and encourages its commission by words or other agree-

ment. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App.) (op. on reh'g), *cert. denied,* 519 U.S. 1030, 117 S.Ct. 587, 136 L.Ed.2d 516 (1996). An agreement of parties to act together in a common design can seldom be proved by words, but reliance can often be had on the actions of parties showing an understanding and a common design to do a certain act. *Wygal v. State,* 555 S.W.2d 465, 469 (Tex.Crim. App.1977).

 Circumstantial evidence alone may be used to prove that one is a party to an offense. *Id.* In determining whether the accused was a party, it is proper to look to events occurring before, during and after the commission of the offense. *Cordova v. State,* 698 S.W.2d 107, 111 (Tex. Crim.App.1985), *cert. denied,* 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). While mere presence at or near the scene of a crime is not alone sufficient to prove that a person was a party to the offense, it is a circumstance tending to prove guilt, which combined with other facts, may suffice to show that the accused was a participant. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App.1987). Similarly, while flight alone is not dispositive of guilt, evidence of flight is a circumstance from which an inference of guilt may be drawn. *Valdez v. State,* 623 S.W.2d 317, 321 (Tex.Crim.App.1979) (op. on reh'g). Likewise, the use of a false name to avoid identification by an accused may indicate a consciousness of guilt with regard to the offense in question. *Felder v. State,* 848 S.W.2d 85, 98 (Tex.Crim.App. 1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993). In a circumstantial evidence case, it is not necessary that every fact point directly and indepen-

---

4. The term "criminal street gang" is defined in the penal code as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuous-ly or regularly associate in the commission of criminal activities." TEX. PENAL CODE ANN. § 71.01(d) (Vernon 2003).

dently to the guilt of the accused; rather, it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993), *cert. denied*, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994).

### B. The Evidence

Paragraph one of the State's petition alleged that L.A.S. violated section 22.015, when "he did then and there with the intent to coerce or induce or solicit [J.A.], a child younger than 17 years of age, to actively participate in the activities of a criminal street gang, and the defendant did cause bodily injury to [J.A.], by hitting him with his hand." Thus, in the instant case, the juvenile court's determination that L.A.S. engaged in delinquent conduct is proper if the evidence sufficiently demonstrates that he committed the offense of coercing, inducing, or soliciting gang membership by his own conduct or if he, acting with intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid another person in the commission of coercing, inducing, or soliciting gang membership. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2), 22.015(b).

At the adjudication hearing, J.A. positively identified J.L.M. as the assailant who struck him with the belt, but said he did not recognize L.A.S. as one of the boys who encircled him. J.A. said that not all of the approximately seven boys who encircled him during the assault hit him. According to J.A., his assailants were mostly Hispanic[5] males, "a little younger" than himself, dressed in "white shirts and Dickie pants."

During the adjudication hearing, the State did not present the testimony of any eyewitnesses who observed L.A.S. at the scene or who saw members of the group of young men actually hitting J.A. Benedir testified that, on the day of the assault, he looked out the inspection station's office window and saw a group of approximately three or four young men, dressed in white T-shirts, chasing J.A. Although Benedir could not identify the young men chasing J.A., he testified that the young man at the front of the group was bleeding from his head and had a leather belt rolled over his hand.

Officer Holder testified that he saw L.A.S., J.L.M., the unidentified male, and the unidentified female walking approximately two blocks from the scene of J.A.'s assault. According to Officer Holder, when he initially spotted the four individuals, it did not appear as though they were trying to get away, but as soon as he approached the individuals in his police vehicle, they changed directions, "looking as to almost go in between some houses right there around the 800 block of Oak Street." Nonetheless, he indicated that the four individuals immediately stopped walking after he exited his vehicle and told them to stop. Officer Holder testified that upon detaining L.A.S. he noticed that "his shirt appeared to messed up" and "semi-untucked."

Officer Humberto Gomez, an Arlington police officer who arrived shortly after Officer Holder detained L.A.S. and J.L.M., testified that on the afternoon in question, L.A.S. was wearing a white T-shirt and blue jeans, and J.L.M. was wearing a white muscle shirt and gray pants. Officer Gomez further testified that at that time, he noticed that J.L.M. was bleeding from

---

**5.** J.A. also testified that at least one African American young man participated in encir-

cling him.

"the back of his head, around his ear area." According to Officer Gomez, when he questioned J.L.M. about his involvement with the assault and the blood on his head at the scene of detainment, J.L.M. denied that he had gotten in a fight with J.A. and maintained that the injury to his head was the result of running into a pole. After J.L.M. was arrested and taken to the juvenile detention center, he asked to speak with Officer Gomez and he admitted to Officer Gomez that he had fought with J.A., striking him with a belt. J.L.M. maintained that he had acted alone and denied any involvement by L.A.S.

Officer Gomez spoke with L.A.S. at the juvenile detention center. L.A.S. did not offer any information about the assault, but he asked Officer Gomez what would happen if he were to strike Officer Gomez's partner. In addition, Officer Gomez testified that, while at the juvenile detention center, he observed L.A.S. and J.L.M. making hand signals to one another. According to Officer Gomez, the signals L.A.S. and J.L.M. exhibited were not "regular, ordinary everyday gestures," rather they appeared "very stylistic" in nature.

During the adjudication hearing, the State called Officer Gillis to testify regarding his knowledge about the M.K.L. gang and his prior interactions with both L.A.S. and J.L.M. Officer Gillis testified that North Arlington had a history of gang activity, that M.K.L. was a criminal street gang in the area, and that March 2003 was a heavy recruiting period for M.K.L. Officer Gillis further testified that the dress associated with M.K.L. included "blue khaki pants, black khaki pants, [and] white shirts" and he indicated that "Dickie pants [were] extremely popular" among M.K.L. members.

In addition, Officer Gillis testified that he had known both L.A.S. and J.L.M. for approximately two years and had interviewed both of the young men on several occasions concerning incidents linked with gang involvement. According to Officer Gillis, during an interview prior to the assault, J.L.M. had admitted that he was a member of M.K.L. With regard to L.A.S., Officer Holder opined that he was a member of M.K.L. due to his constant association with J.L.M. and other known members of M.K.L. During his testimony, Officer Holder also stated that L.A.S. dressed in the manner of M.K.L. members at school and had previously exhibited gang activity by participating in an offense with an affiliated member of M.K.L. Moreover, while Officer Holder acknowledged that he was not aware that L.A.S. and J.L.M. were cousins, he indicated that he did not base his opinion regarding L.A.S.'s membership in M.K.L. solely upon his associations with J.L.M.

The State also called Officer Carlos Alaniz, a detective in the Gang Unit of the Arlington Police Department, to testify as an expert on gangs. Officer Alaniz testified that M.K.L. was a criminal street gang in Arlington with approximately 25 members and that the 300 block of Randol Mill was located within the geographic territory associated with M.K.L. activity. With respect to M.K.L., Officer Alaniz also testified that, in order to recruit new members, a member of the gang would typically go up to an individual and ask him to join the gang, and if the individual refused, he might be assaulted for disrespecting the gang.

### 3. Discussion

■ Circumstantial evidence exists connecting L.A.S. as a party to the offense of coercing, soliciting, or inducing gang membership. Our review of the record reveals that this circumstantial evidence constitutes barely more than a "mere modicum." J.A.'s testimony that before the assault the group asked him to join M.K.L. and testimony from Arlington police offi-

cers characterizing M.K.L. as a criminal street gang involved in heavy recruiting at the time of the offense, support the juvenile court's determination that J.A.'s assault was gang-related. Although there is no evidence that L.A.S. struck J.A. himself, the record reflects that J.A.'s assailants at least encouraged and aided in the commission of the assault by encircling him after he rebuffed the invitation to join M.K.L. Shortly after the assault, police apprehended L.A.S. walking on a street approximately two blocks from the scene with his cousin, J.L.M. J.A. identified J.L.M. as one of the people who assaulted him. Additionally, an inference of guilt may be drawn from testimony that L.A.S., J.L.M., and the two unidentified individuals immediately changed directions when they noticed Officer Holder approaching them. *See, e.g., Mayhue v. State*, 969 S.W.2d 503, 508 (Tex.App.-Austin 1998, no pet.) (holding evidence of flight supports inference of guilt).

The record also reflects that the group of young men that assaulted J.A. were all dressed in white T-shirts and jeans or "Dickie pants." On the afternoon in question, L.A.S. was dressed in a white T-shirt and jeans. Furthermore, after he was detained by Officer Holder, L.A.S. provided a false name and birthdate to Officer Holder, and he attempted to prevent Officer Gillis from identifying him. These facts likewise raise an inference of guilt. *See Felder*, 848 S.W.2d at 98. Viewing all the evidence in the light most favorable to the juvenile court's findings, and considering the combined and cumulative force of all the incriminating circumstances, we hold that a rational trier of fact could have found beyond a reasonable doubt that

L.A.S. engaged in delinquent conduct as a party to the offense of coercing, soliciting, or inducing gang membership. We hold that the evidence is legally sufficient to support L.A.S.'s adjudication, and we overrule L.A.S.'s first point.

Turning to our factual sufficiency review, viewing all the evidence in a neutral light, favoring neither party, the evidence presented connecting L.A.S. as a party to the offense of coercing, soliciting, or inducing gang membership is so weak as to undermine confidence in the juvenile court's judgment. No direct evidence exists in the record placing L.A.S. at J.A.'s assault.[6] Neither J.A. nor Benedir could identify L.A.S. as one of the assailants. In fact, J.A. specifically said that he did not recognize L.A.S. from anywhere. The record also reflects that J.L.M. denied that L.A.S. was a party to J.A.'s assault.

 Although police apprehended L.A.S. near the scene, the evidence established that school had dismissed only a little earlier, and that even J.A. was walking home from school. Thus, the record supports a noncriminal reason for L.A.S.'s presence near the scene of the assault. Although police apprehended L.A.S. with J.L.M., a person who participated in the assault, J.L.M. is L.A.S.'s cousin. Thus, the record supports a nonoffense-related reason for L.A.S.'s association with J.L.M. This reason for L.A.S.'s presence with J.L.M. on the day of the assault is also supported by the presence of two other people, one male and one female, walking with the cousins. These two people were not involved in the assault,[7] and no evidence exists that L.A.S. was with J.L.M. during the assault, not with these two oth-

---

6. The record is factually sufficient to establish that L.A.S. was a member of M.K.L., but is factually insufficient to establish that L.A.S. threatened or caused bodily injury to J.A. as a primary actor or a party.

7. J.A. testified that all of his assailants were male. Thus, his testimony establishes that the unidentified female was not a party to his assault.

er people. After reviewing all of the evidence in the instant case, we conclude that the evidence is factually insufficient to support the juvenile court's judgment of delinquency based on section 22.015 of the Texas Penal Code. *See Nguyen v. State,* 54 S.W.3d 49, 54–55 (Tex.App.-Texarkana 2001, pet. ref'd); *Ward v. State,* 48 S.W.3d 383, 391 (Tex.App.-Waco 2001, pet ref'd); *Reina v. State,* 940 S.W.2d 770, 774–75 (Tex.App.-Austin 1997, pet. ref'd). Accordingly, we sustain L.A.S.'s second point.

## V. SUFFICIENCY OF THE EVIDENCE UNDER SECTION 71.02

■ In his third and fourth points, L.A.S. contends that the evidence is legally and factually insufficient to support his adjudication under section 71.02 of the Texas Penal Code because the State failed to connect him, either as a primary actor or under the law of parties to the offense of engaging in organized criminal activity. The State, however, maintains that the evidence is sufficient to support the juvenile court's adjudication findings because the evidence demonstrates that L.A.S. was a member of M.K.L. and that he participated in J.A.'s assault.

■ Pursuant to section 71.02 of the Texas Penal Code, a person commits the offense of engaging in organized activity if,

with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit ... murder, capital murder, arson, aggravated robbery, robbery, burglary, theft, aggravated kidnapping, kidnapping, aggravated assault, aggravated sexual assault, sexual assault, forgery, deadly conduct, assault punishable as a Class A misdemeanor, burglary of a motor vehicle, or unauthorized use of a motor vehicle.

TEX. PENAL CODE ANN. § 71.02(a)(1). A determination of guilt in regard to organized criminal activity requires two ingredients: (1) an intent to participate in a criminal combination and (2) the performance of some overt act in furtherance of the agreement. *See Barber v. State,* 764 S.W.2d 232, 235 (Tex.Crim.App.1988). Moreover, "[b]ecause the 'overt act' element of organized criminal activity need not be criminal in itself, acts that suffice for party liability—those that encourage, solicit, direct, aid, or attempt to aid the commission of the underlying offense— would also satisfy the overt act element of section 71.02." *Otto v. State,* 95 S.W.3d 282, 284 (Tex.Crim.App.2003) (footnote omitted).

In the instant case, paragraph two of the State's petition alleged that L.A.S. violated section 71.02 when "he did then and there with the intent to establish, maintain or participate as a member of a criminal street gang ... commit[ ] the assault of [J.A.] by hitting [J.A.] with his hand." Consequently, the State was required to prove that M.K.L. was a criminal street gang, that L.A.S. was a member of M.K.L., and that he committed the overt act of assault by hitting J.A. with his hand or that he encouraged, solicited, directed, aided, or attempt to aid another in the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 7.01, 7.02(a)(2), 71.02(a)(1).

■ In both paragraph one and paragraph two of the State's petition, the manner and means by which the State alleged L.A.S. had committed the offenses in question were almost identical. Specifically, under both paragraphs, the State was required to prove that L.A.S. caused bodily injury (paragraph one) or assaulted (paragraph two) J.A. by hitting him with his hand either as primary actor or as a party. Thus, for the same reasons set forth and discussed above with respect to point one,

we hold that the evidence is legally sufficient to support the juvenile court's findings that L.A.S. violated section 71.02 by participating in J.A.'s assault. As a result, we overrule L.A.S.'s third point. However, as indicated above with respect to point two, because our review of the entire record demonstrates that the proof connecting L.A.S. as a participant in J.A.'s assault is so obviously weak as to undermine confidence in the juvenile court's judgment, we must sustain L.A.S.'s fourth point.

## VI. CONCLUSION

Having sustained L.A.S.'s second and fourth points on appeal, we reverse the juvenile court's judgment and remand this case for a new adjudication hearing.