In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00430-CV


____________________



IN THE MATTER OF I.A.G.






On Appeal from the 317th District Court


Jefferson County, Texas


Trial Cause No. C-10952-J






 OPINION


 A jury found that I.A.G. engaged in delinquent conduct by engaging in organized
criminal activity and by committing a terroristic threat. (1) The trial court then committed
I.A.G. to the Texas Youth Commission for an indeterminate sentence not to exceed his
nineteenth birthday. In two issues, I.A.G. challenges the sufficiency of the evidence of both
of the State's theories to prove him guilty of delinquent conduct. We affirm the trial court's
judgment.


Standards of Review

 We review adjudications of delinquency in juvenile cases by applying the same
standards that we apply to sufficiency of the evidence challenges in criminal cases. See In
re C.M.G., 180 S.W.3d 836, 838 (Tex. App.-Texarkana 2005, pet. denied); In re M.C.L., 110
S.W.3d 591, 594 (Tex. App.-Austin 2003, no pet.); see also Tex. Fam. Code Ann.§ 54.03
(Vernon 2008) (adjudications of delinquency in juvenile cases are based on criminal
standards of proof). In a legal sufficiency challenge, we review all of the evidence in the
light most favorable to the verdict, and we decide if any rational trier of fact could find the
essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Evans v. State, 202 S.W.3d 158, 161 (Tex.
Crim. App. 2006).

 In determining the evidence's factual sufficiency, we review the evidence in a neutral
light. See Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App.), cert. denied, 128 S.Ct.
282, 169 L.Ed.2d 206, 76 U.S.L.W. 3165 (2007). "Evidence can be factually insufficient in
one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict
seems clearly wrong and manifestly unjust, and (2) when the supporting evidence is
outweighed by the great weight and preponderance of the contrary evidence so as to render
the verdict clearly wrong and manifestly unjust." Id. (citing Watson v. State, 204 S.W.3d
404, 414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000)). 

 While the appellate court may "second-guess the [fact finder] to a limited degree, the
review should still be deferential, with a high level of skepticism about the [fact finder's]
verdict required before a reversal can occur." Id. (citing Watson, 204 S.W.3d at 417; Cain
v. State, 958 S.W.2d 404, 407, 410 (Tex. Crim. App. 1997)). In examining a factual
sufficiency challenge, we "must give due deference to the fact finder's determinations
concerning the weight and credibility of the evidence . . . ." Swearingen v. State, 101 S.W.3d
89, 97 (Tex. Crim. App. 2003). 

The Evidence

 On the afternoon of May 7, 2008, I.A.G., and others, were involved in an altercation
that occurred in the front yard of the complaining witness's home (hereinafter referred to as
"the homeowner"). While attempting to stop the altercation, the homeowner, who had not
initially been involved in the fight, and I.A.G., who had been a party in the fight, exchanged
blows. During the altercation, the homeowner heard I.A.G. say "North Side" several times,
which the homeowner explained he understood to be gang-related. According to the
homeowner, "North Side" (2) is a gang in Port Arthur, and the homeowner had seen that name
written on walls throughout the city. Ultimately, the homeowner told the group to leave, and
they left. The homeowner called the police, who then sent an officer.

 Later that day, the homeowner, while away from his home, was notified that some
individuals had thrown rocks and tire irons in his yard. The homeowner returned to his house
and called the police. Before the police arrived, an Explorer stopped in front of the home. 
I.A.G., along with three others got out. I.A.G. and one of the others held tire irons while
standing near the Explorer. The homeowner explained that under the circumstances,
including the earlier altercation, he felt threatened and he feared serious bodily injury. The
homeowner also stated that despite the fact that I.A.G. and the other person only displayed
the tire irons, he felt threatened. 

 Shortly after exiting the Explorer, the driver asked the homeowner, "'Why you hitting 
little kids?'" While standing behind the Explorer, the driver then pointed a pistol at the
homeowner. At that point, the homeowner instructed his father to go inside, after which the
gunman said, "'I'm going to kill you. I'm going to kill you.'" The homeowner testified that
this also caused him to fear imminent danger of serious bodily injury and to believe that the
gunman was going to kill him. After he was threatened with being killed, the homeowner
turned around, entered his house, and heard I.A.G. say, "'Go, go, go, go, he's going to get
his gun.'" I.A.G. and the others then left. The homeowner, once again, called the police. 

 The homeowner testified that he felt the two youths holding the tire irons acted in
concert with the gunman. With respect to whether any gang was specifically mentioned
during the confrontation involving the gun, the homeowner acknowledged that the gunman
never mentioned any gang. 

 A Port Arthur police officer with the "street crimes unit with a specialty in gangs,
street gangs" also testified at trial. The officer indicated that I.A.G. and the other minor that
participated in the gunman's confrontation with the homeowner had previously been
wounded in a drive-by shooting while at a known Norte 14 gang hangout. Additionally, the
officer testified that I.A.G. told him that he was a member of the North Side 14 gang. The
officer stated that the gunman, who owned the Explorer, was also a member of the Norte 14
gang. The officer added that the other minor who participated in the confrontation that
involved the gunman also held membership in the Norte 14 gang, which he based on the
minor's admission as well as tattoos on that minor's wrists that together read "North Side
14." The officer expressed his opinion that on May 7, 2008, the gunman and two minors had
acted in concert as members of their gang in threatening the homeowner.

 A second Port Arthur police officer that also investigated the confrontation testified
at trial. According to the second officer, the homeowner told him that he felt threatened and
feared being shot. The second officer confirmed that he was familiar with the participants
in the confrontation, and he knew them all to be members of the Norte 14 gang.Analysis

 1. Organized Criminal Activity

 The petition alleges that I.A.G. committed the offense of engaging in organized
criminal activity, "as a member of a criminal street gang," by committing the offense of
"deadly conduct" when he, by his reckless conduct, placed the homeowner in imminent
danger of serious bodily injury by pointing a firearm in the homeowner's direction. 
Engaging in organized criminal activity occurs if, "with the intent to establish, maintain, or
participate in a combination or in the profits of a combination or as a member of a criminal
street gang, [the defendant] commits or conspires to commit one or more of the following:
. . . deadly conduct[.]" Tex. Pen. Code Ann. § 71.02(a)(1) (Vernon Supp. 2008). 

 I.A.G. argues that the evidence is legally insufficient to show that, as a member of a
street gang, he engaged in organized criminal activity by way of deadly conduct. Because
"organized criminal activity" as alleged by the State in this case was based on I.A.G.'s
participation in a "criminal street gang," we also consider the definition of "criminal street
gang." The Legislature defines a "criminal street gang" as "three or more persons having a
common identifying sign or symbol or an identifiable leadership who continuously or
regularly associate in the commission of criminal activities." Tex. Pen. Code Ann. §
71.01(d) (Vernon 2003). 

 Focusing on the frequency of criminal activity that suffices to constitute a "criminal
street gang," I.A.G. asserts that one criminal act is not sufficient to prove that a person has
engaged in organized criminal activity. I.A.G. relies on Nguyen v. State, 1 S.W.3d 694 (Tex.
Crim. App. 1999), to support this argument. In Nguyen, the Court of Criminal Appeals
affirmed the acquittal of a defendant who had been jointly involved in only a single crime,
a murder, where no evidence indicated that the group intended to commit more than the one
crime. Id. at 697-98.

 In this case, however, the criminal activity identified by the homeowner and by the
Port Arthur officers included multiple criminal incidents. The officers described criminal
activity connected to members of the Norte 14 gang that included vandalism, assault, and
specific instances of terroristic threats. The second officer's testimony further indicated that
the gang's activities resulted in numerous police calls to locations where the gang frequently
gathered.

 While I.A.G. argues that there was no evidence that he committed or conspired to
commit further criminal activities, the definition of organized criminal activity involving
members of street gangs requires criminal street gang membership and the commission or
the conspiracy to commit one of the laundry-list crimes involving the gang. See Tex. Pen.
Code Ann. § 71.02(a)(1)-(13) (Vernon Supp. 2008). I.A.G. cites Nguyen for the proposition
that section 71.02 cannot "be understood to include an agreement to jointly commit a single
crime." However, the participants to the crime in Nguyen were not members of a street gang;
therefore, to prove that those participants had engaged in an organized criminal activity, the
State was required to prove that the participants in that case had established, maintained or
participated "in a combination" under the first portion of the statute. Nguyen, 1 S.W.3d at
697. In this case, the State does not rely on the statute's "in a combination" language
addressed in Nguyen, as the State alleged and proved that I.A.G. was a member of the same
gang as the other two participants to the confrontation with the homeowner. See Tex. Pen.
Code Ann. § 71.02(a)(1); Nguyen, 1 S.W.3d at 696-97. Thus, Nguyen is not controlling
authority because the State, by showing that I.A.G. was a member of a "criminal street gang"
sufficiently met the statute's implied requirement of regular criminal activity. 

 In summary, when viewed in the light most favorable to the judgment, we find the
evidence legally sufficient to establish that gang members of Norte 14 were involved in
criminal activity on a regular basis. There is also legally sufficient evidence that at the time
of the offenses in May 2008, I.A.G. was a member of the gang. Consequently, we do not
agree with I.A.G.'s contention that the frequency of I.A.G.'s criminal activity is insufficient
on this record.

 I.A.G. also argues that the evidence is legally insufficient to show that he committed
or conspired to commit deadly conduct. As defined by statute, "[d]eadly conduct" occurs
when one "recklessly engages in conduct that places another in imminent danger of serious
bodily injury." Tex. Pen. Code Ann. § 22.05(a)(Vernon 2003). Under section 22.05,
"[r]ecklessness and danger are presumed if the actor knowingly pointed a firearm at or in the
direction of another whether or not the actor believed the firearm to be loaded." Tex. Pen.
Code Ann. § 22.05(c) (Vernon 2003).

 In his brief, I.A.G. concedes that "[b]y pointing the gun in the direction of [the
homeowner], [the gunman] satisfied the 'recklessness' and 'danger' elements of section
22.05." Nevertheless, I.A.G. contends that the gunman acted alone and that I.A.G.'s
presence with the tire iron and his participation in the earlier altercation with the homeowner
provides "no additional evidence to make the connection that [I.A.G.] intended to threaten
[the homeowner] with a firearm." 

 Under Texas law, the law of parties enlarges upon a person's potential criminal
responsibility for acts that involve others. See Tex. Pen. Code Ann. §§ 7.01, 7.02 (Vernon
2003). Under the law of parties, a person is criminally responsible for the offense of another,
and can be convicted as a party, if, acting with intent to promote or assist the commission of
the offense, he solicits, encourages, directs, aids, or attempts to aid the other person
committing the offense. Tex. Pen. Code Ann. §§ 7.01, 7.02. 

 In applying the law of parties, the defendant's physical presence at the scene is a
factor used in evaluating whether the defendant acted with the intent to promote or assist the
commission of the offense. "Evidence is sufficient to convict under the law of parties where
the defendant is physically present at the commission of the offense and encourages its
commission by words or other agreement." Ransom v. State, 920 S.W.2d 288, 302 (Tex.
Crim. App. 1994) (op. on reh'g); Davis v. State, 195 S.W.3d 311, 320 (Tex. App.-Houston
[14th Dist.] 2006, no pet.). Though mere presence does not automatically make one a party
to a crime, it is a circumstance tending to prove party status and, when considered with other
facts, may be sufficient to prove that the defendant was a participant. Davis, 195 S.W.3d at
320. 

 In determining whether I.A.G. is responsible for the gunman's act of threatening the
homeowner with a gun under the law of parties, we review events occurring before, during,
and after the offense and may rely on actions of the defendant that show an understanding
and common design to commit the offense. Ransom, 920 S.W.2d at 302; Davis, 195 S.W.3d
at 320. While there is no question that the gunman, and not I.A.G., held the gun while it was
pointed at the homeowner, the court's charge allowed the jury to consider I.A.G.'s
responsibility for the gunman's act under the law of the parties instruction. 

 Relying on Wooden v. State, 101 S.W.3d 542 (Tex. App.-Fort Worth 2003, pet. ref'd),
I.A.G. argues that his mere presence at the home is insufficient to support a finding that he
committed deadly conduct. But here, the evidence shows more than I.A.G.'s mere presence
at the scene. Hours before the confrontation, I.A.G. had been involved in a fight with the
homeowner and then returned with others under circumstances tending to show the group
anticipated and planned to again confront the homeowner in retaliation for the fight that had
occurred earlier that day. While circumstantial, there is sufficient evidence that the three
agreed to act in concert to threaten the homeowner. We conclude that I.A.G.'s presence and
actions tend to show his agreement to commit the offense as well as encouragement of the
gunman's acts. See Ransom, 920 S.W.2d at 302. Therefore, we find the evidence sufficient
to support a conviction under the law of parties. Id.

 In summary, we find the evidence legally sufficient to prove that I.A.G., under the law
of parties, committed deadly conduct while engaged in organized criminal activity as a
member of a criminal street gang. See Jackson, 443 U.S. at 319; Evans, 202 S.W.3d at 161. 
Having addressed I.A.G.'s arguments, we overrule issue one.

 2. Terroristic Threat

 A person commits the offense of "terroristic threat" if "he threatens to commit any
offense involving violence to any person or property with intent to . . . place any person in
fear of imminent serious bodily injury[.]" Tex. Pen. Code Ann. § 22.07(a)(2) (Vernon Supp.
2008). The petition alleges that I.A.G. intentionally and knowingly placed the homeowner
"in fear of imminent serious bodily injury" by threatening "to commit an offense involving
violence" when I.A.G. threatened the homeowner with a "tire iron."

 I.A.G. asserts that the evidence is legally and factually insufficient to show that he
threatened the homeowner "with an offense involving violence." We disagree and believe
the evidence is legally and factually sufficient to support the judgment.

 Although the homeowner testified to his fear, we first note that section 22.07 contains
no requirement that the victim or anyone else be actually placed in fear of imminent serious
bodily injury. See id. § 22.07(a)(2); Cook v. State, 940 S.W.2d 344, 347 (Tex.
App.-Amarillo 1997, pet. ref'd). Rather, if the defendant sought or desired that his threat
placed the victim in fear of imminent serious bodily injury, the offense is complete. Dues
v. State, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982); Poteet v. State, 957 S.W.2d 165, 167
(Tex. App.-Fort Worth 1997, no pet.). It is immaterial to the offense of terrroristic threat
that the defendant "had the capability or the intention to carry out his threat." Dues, 634
S.W.2d at 305. Nevertheless, and regardless of whether the threat was carried out, the
reaction of the homeowner to the threat is some evidence of the defendant's intent. See
Hadnot v. State, 884 S.W.2d 922, 925-26 (Tex. App.-Beaumont 1994, no pet.). 

 In this case, the homeowner testified that he was placed in fear of serious injury even
though I.A.G. stood silently holding the tire iron. Moreover, the circumstances described in
the record are sufficient to support the jury's conclusion that I.A.G., who stood beside the
Explorer with a tire iron while others simultaneously threatened the homeowner, intended
to place the homeowner in fear of serious bodily injury. 

 We find the evidence legally and factually sufficient to support the finding that I.A.G.
committed the offense of terroristic threat. The evidence is not so weak that the verdict
seems clearly wrong and manifestly unjust, nor is the evidence supporting the jury's finding
outweighed by the great weight and preponderance of the contrary evidence. See Roberts,
220 S.W.3d at 524; Johnson, 23 S.W.3d at 11. We overrule I.A.G.'s second issue.

 Next, we consider the erroneous language in the judgment stating that I.A.G. pled true
when the record shows otherwise. No party argues that the Amended Judgment and Order
of Commitment ("Judgment") erroneously states that I.A.G. plead true to all the charges and
that the trial court found true all of the allegations. The record clearly reflects that I.A.G.
denied the charges and that the case was tried to a jury. The Texas Family Code authorizes
this Court to modify judgments in juvenile proceedings. Tex. Fam. Code Ann. § 56.01(I)
(Vernon 2008). We have the authority to correct, modify, and reform a judgment to make
the record speak the truth. In re J.M., 287 S.W.3d 481, 491 (Tex. App.-Texarkana 2009, no
pet.); In re J.K.N., 115 S.W.3d 166, 174 (Tex. App.-Fort Worth 2003, no pet.); In re K.B.,
106 S.W.3d 913, 916 (Tex. App.-Dallas 2003, no pet.). Therefore, we order that the
following sentences replace sentences two and three in the third paragraph of the Judgment: 
"And after hearing the charges pending against him/her, the said child denied all of the
charges in open Court. All charges were tried before the empaneled jury." See Tex. R. App.
P. 43.2(b). Moreover, the following shall be substituted for paragraph four of the Judgment: 
"And then, upon the Court's receipt of the jury's affirmative responses to the submitted
special issues and hearing the pleadings of all parties and after hearing the evidence and
argument of counsel, found beyond a reasonable doubt that the following allegations are true
and supported by the evidence:" See id. We affirm the trial court's judgment as modified.

 AFFIRMED AS MODIFIED.



 ____________________________

 HOLLIS HORTON

 Justice


Submitted on August 21, 2009

Opinion Delivered October 1, 2009

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. The Amended Judgment and Order of Commitment states that I.A.G. pled true to the
charges and the trial court found all the charges true. The record reflects otherwise.
2. Based on testimony from two officers of the Port Arthur Police Department, "North
Side" and "Norte 14" refer to the same gang in the Port Arthur area and are used
interchangeably.