**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00086-CV**
_____

**IN THE MATTER OF J.M.S.**

**On Appeal from the County Court at Law No. 2**
**Orange County, Texas**
**Trial Cause No. J5580**

**MEMORANDUM OPINION**

A jury found that J.M.S. engaged in delinquent conduct by committing the offense of indecency with a child. The trial court conducted a disposition hearing, and in accordance with the parties' agreement, placed J.M.S. on probation for twenty-four months with no less than twelve months of intensive supervision. In four appellate issues, J.M.S. challenges (1) the admission of testimony from an outcry witness after the trial judge determined that the State's designated outcry witness was not a proper witness, (2) the legal sufficiency of the evidence to prove that any indecent act occurred, (3) the legal sufficiency of the evidence to prove that J.M.S.

"committed any act alleged regarding the child[,]" and (4) the legal sufficiency of the evidence to prove that J.M.S. had the requisite intent to commit the charged offense. We affirm the trial court's judgment.

## ISSUES TWO, THREE, AND FOUR

In issues two, three, and four, J.M.S. challenges the legal sufficiency of the evidence to prove that any indecent act occurred, that J.M.S. "committed any act alleged regarding the child[,]" and that J.M.S. had the requisite mental intent to commit the charged offense. We address issues two, three, and four together. Because these legal sufficiency issues, if sustained, would result in reversal and rendition in favor of J.M.S., we address them first. *See* Tex. R. App. P. 47.1.

"We review adjudications of delinquency in juvenile cases by applying the same standards that we apply to sufficiency of the evidence challenges in criminal cases." *In re I.A.G.*, 297 S.W.3d 505, 507 (Tex. App.—Beaumont 2009, no pet.). In criminal cases, we apply the *Jackson v. Virginia* legal-sufficiency standard to determine "whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under a legal sufficiency standard, we assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the

2

crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

The State's petition alleged that J.M.S. engaged in delinquent conduct by committing indecency with a child against H.P. by touching H.P.'s genitals. H.P., who was four years old at the time of trial, testified that J.M.S. touched her "lulu," and the record reflects that H.P. made a gesture indicating a particular part of her body. Kim Hanks, forensic interview supervisor and multi-disciplinary team coordinator at Garth House Child Advocacy Center, testified that she interviewed H.P., and she explained that H.P. used the word "lulu" to refer to her vaginal area. According to Hanks, when she gave H.P. a doll, H.P. pulled the doll's underwear away and put her hand inside to show what had happened. Hanks explained that when H.P., who was three years old at the time of the interview, demonstrated on the doll, she was touching "[t]he place she calls a lulu." According to Hanks, H.P. stated that her clothes were on when the touching occurred.

H.P.'s grandmother, M.G., testified that she believed the accusation against J.M.S. was false. M.G. explained that she is also J.M.S.'s grandmother, and H.P. and

J.M.S. are cousins. According to M.G., the only time J.M.S. was not in her sight on the day in question is when he was outside, "but there were adult eyes on him out there." H.P.'s father testified that J.M.S. and H.P. were never alone together on the date in question, and he explained that he had "[n]o hesitation at all[]" in telling the jury that the alleged conduct did not occur. On cross-examination, H.P.'s father testified that there were times when both J.M.S. and H.P. were not in his sight. J.M..S.'s father, R.S., testified that he believes H.P. was coached because H.P.'s mother and father were "going through a bad divorce[.]"

H.P.'s mother, B.L., testified that while she was bathing H.P., she noticed a rash on the inside of H.P.'s legs. B.L. explained that when she tried to examine the rash, H.P. locked her legs and became angry, and when B.L. asked H.P. whether someone had touched her, H.P. screamed J.M.S.'s name. B.L. testified that she did not question H.P. further about what had happened, and B.L. made a police report the next day and then took H.P. to the hospital for a sexual assault examination. B.L. testified that she also took H.P. to Garth House for an interview. B.L. explained that she has not tried to cut off H.P.'s relationship with her father, and she testified that she never told H.P. to say that J.M.S. touched her. Forensic nurse and certified sexual assault nurse examiner Rachel Thomas testified that during her physical examination of H.P.'s genital area, H.P. told her that J.M.S. touched her there with his hand, and

4

H.P. pointed to her genitalia. The State rested at the conclusion of Thomas's testimony.

Psychiatrist Dr. Edward Gripon testified that he performed a standard psychiatric examination of J.M.S., who was almost fourteen years old at that time, and Gripon found "no evidence of a mental condition[.]" Gripon testified that he had seen the video recording of the interview of H.P. at Garth House, and he opined that H.P. appeared to be an "essentially normal" three-year-old child. According to Gripon, H.P. "was more interested in wiping the eraser on the board than . . . the questions that were being asked[,]" and she sometimes gave contradictory answers. Gripon testified that the reliability of a child H.P.'s age is "low." J.M.S., who was fourteen years old at the time of the trial, testified that he was never alone with H.P. on the date in question. J.M.S. denied touching H.P.'s genitals.

Section 21.11 of the Texas Penal Code provides that a person commits the offense of indecency with a child when he engages in sexual contact with a child or causes the child to engage in sexual contact. Tex. Penal Code Ann. § 21.11(a)(1). The Penal Code defines "sexual contact" as, among other things, "any touching by a person, including touching through clothing, of . . . any part of the genitals of a child[.]" *Id.* § 21.11(c)(1). The "sexual contact" must have been

"committed with the intent to arouse or gratify the sexual desire of any person[.]" *Id*. § 21.11(c).

H.P. testified that J.M.S. touched her "lulu," and her gestures presumably indicated that area. *See Wawrykow v. State*, 866 S.W.2d 87, 90 (Tex. App.—Beaumont 1993, pet. ref'd); *Gaona v. State*, 733 S.W.2d 611, 613 n. 1 (Tex. App.—Corpus Christi 1987, pet. ref'd) (holding that when parties do not elicit for the record details explaining the meaning of demonstrations, the appellate court presumes the demonstrations supported the jury's verdict). Hanks testified that when she interviewed H.P. and gave her a doll, H.P. put her hand inside the doll's underwear to demonstrate what had happened. Hanks also explained that H.P. used the term "lulu" to refer to her vaginal area. In addition, B.L. testified that H.P. told her that J.M.S. had touched her.

Rarely will there be direct evidence of what an accused intended at the time of sexual contact; therefore, the trier of fact must generally infer intent from circumstantial evidence. *In the Matter of H.T.S.*, No. 04-11-00847-CV, 2012 WL 6743562, at *9 (Tex. App.—San Antonio Dec. 31, 2012, pet. denied) (mem. op.). The jury was entitled to infer the requisite intent to arouse or gratify sexual desire from J.M.S.'s conduct and all surrounding circumstances. *See id*. In addition, the testimony of a child victim alone is sufficient to support a conviction for indecency

6

with a child. *See id.*; *see also In the Matter of A.B.*, 162 S.W.3d 598, 601 (Tex. App.—El Paso 2005, no pet.). Viewing the evidence in the light most favorable to the verdict, we find that the jury could reasonably conclude, beyond a reasonable doubt, that J.M.S. committed indecency with a child, and that he did so with the requisite intent. *See Jackson*, 443 U.S. at 318-19; *see also Hooper*, 214 S.W.3d at 13; *In the Matter of H.T.S.*, 2012 WL 6743562, at \*9. Accordingly, we overrule issues two, three, and four.

## ISSUE ONE

In issue one, J.M.S. argues that the trial judge erred by ruling that Hanks was not a proper outcry witness and permitting outcry testimony from B.L. when the State had, by amending its pleadings, abandoned B.L. as an outcry witness. J.M.S. asserts that the trial judge's designation of B.L. as the outcry witness placed the judge "in an adversarial role and allowed for improper hearsay testimony."

The record reflects that the State listed B.L. as an outcry witness on its amended discovery compliance dated December 26, 2018. However, the record also reflects that in its amended notice of intent to introduce the hearsay statements of a child abuse victim, filed on January 7, 2019, the State identified Hanks as the witness through whom it intended to introduce H.P.'s outcry. During a pretrial hearing, the trial court noted the State's intention to present Hanks as its outcry witness, and the

7

State then took Hanks on voir dire examination. Hanks explained that she interviewed H.P., and Hanks acknowledged that the first person over age eighteen to whom H.P. made an outcry was her mother.

Defense counsel objected that under section 38.072 of the Texas Code of Criminal Procedure, the outcry witness can only be the first adult to whom the child made a statement regarding the abuse. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a), (b)(1)(A); *see also* Tex. Fam. Code Ann. § 54.031 (parallel provision in the Juvenile Justice Code). The State asserted that B.L. is not the outcry witness because case law provides that the victim's statement about the abuse must give more than "a general allusion of sexual abuse[;]" rather, the victim must clearly describe the abuse. The State argued that H.P. "just made a general allusion saying that [J.M.S.] touched me there, and it hurt." Defense counsel contended that the victim made "a very specific statement[]" that J.M.S. had touched her vaginal area.

The trial judge stated, "I'm going to find that the statement to the mother was enough; and I will consider the mother to be the outcry witness, and I'll allow the State to call the mother as the outcry witness." Defense counsel then asserted that the State's amended notice, in which it had named Hanks as the outcry witness, superseded the prior notice that had named B.L. The trial judge stated, "I will rule that the mother should be the outcry witness. She was initially named as the outcry

8

witness. . . . They may have amended it. I don't dispute that, but I'm not going to completely shut them out." The trial judge stated that defense counsel had "just argued for five minutes that you relied on their discovery that the mother was the outcry witness." Defense counsel again objected to B.L. being allowed to testify as an outcry witness.

The erroneous admission of outcry testimony under article 38.072 is a non-constitutional error. *Merrit v. State*, 529 S.W.3d 549, 556 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Therefore, we must disregard such an error unless it affected J.M.S.'s substantial rights. *See* Tex. R. App. P. 44.2(b); *see also* Tex. R. Evid. 103(a). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Reversal is not appropriate if, after examining the record as a whole, we have fair assurance that the error either did not influence the jury or influenced the jury only slightly. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001).

Assuming, without deciding, that the trial court abused its discretion by permitting B.L. to testify as an outcry witness, viewing the record as a whole, we cannot say that J.M.S.'s substantial rights were affected. H.P. testified that J.M.S. touched her vaginal area, and Hanks testified that H.P. pulled a doll's underwear

away and put her hand inside to show what had happened to her. After examining the entire record, we have fair assurance that the admission of B.L.'s testimony as an outcry witness did not influence the jury or influenced the jury only slightly. *See id.* at 444. Accordingly, we overrule issue one. Having overruled each of J.M.S.'s issues, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 5, 2019
Opinion Delivered March 5, 2020

Before McKeithen, C.J., Kreger and Johnson, JJ.

10