NO. 07-10-0194-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 17, 2011
_____

In the Matter of A.O.
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2009-763,299; HONORABLE LES HATCH, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., PIRTLE, J., and BOYD, S.J.[1]

Appellant challenges his adjudication of delinquent conduct and his commitment to the Texas Youth Commission (TYC) by contending 1) the trial court erred in denying his motion to suppress, 2) the evidence was factually insufficient to show that he participated in the offense which constituted delinquent conduct, and 3) the evidence was factually insufficient to meet one of the statutory requirements for commitment to TYC. We affirm the judgment and order.

*Motion to Suppress*

The State sought to have appellant adjudicated for engaging in delinquent conduct due to his particpation in a burglary of the A-Plus Storage facility on January

_____

[1]John T. Boyd, Senior Justice, sitting by assignment.

18, 2010. Appellant moved to suppress evidence connecting him to the offense because the police allegedly had no reasonable suspicion to stop the vehicle in which he was a passenger. The trial court overruled the motion. We review the trial court's decision under the standard discussed in *Ford v. State,* 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). It requires us to defer to the factfinder's resolution of historical facts but enables us to review *de novo* interpretations and applications of the law. *Id.* at 493. We next note that an officer may detain a vehicle and its occupants when he has specific articulable facts which, taken together with rational inferences therefrom, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Brother v. State,* 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). With that said, we turn to the evidence of record.

Officer David Mora testified that at approximately 2:00 to 3:00 a.m. on January 18, he observed a vehicle parked at the drive-through window of a Taco Bell restaurant. The business was closed, and its lights were out. He knew that a burglary had been committed at a Chicken Express restaurant half a block away two days earlier and that entry was gained via a drive-through window. He also knew from his dispatcher that there had been four or five burglaries reported within the last several hours, which number was rather unusual. Moreover, many of them involved gaining entry by breaking windows or prying open doors. Thus, he decided to investigate the matter.

When the officer drove onto the parking lot of the restaurant, the other vehicle drove away. Mora then activated his lights and stopped the car. Inside of it were three males, including appellant, none of whom were carrying any identification. Several minutes later, there came a broadcast over Mora's radio about a green sport utility

2

vehicle occupied by three or four persons and those individuals had been involved in a burglary. Mora heard the report and realized that the vehicle he had stopped matched the description of the vehicle in the broadcast.

In *Klare v. State,* 76 S.W.3d 68, 77 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd), the court determined that the lateness of the hour, the fact a car was parked behind a closed shopping center, and prior burglaries in the area alone were not sufficient to provide reasonable suspicion for detention. However, here we have additional factors for the officer's consideration. They include the location of the parked vehicle being at the drive-up window of a closed business as opposed to merely being in the parking lot and the fact that only two days previously at a nearby location, a fast food restaurant was burglarized via entry through the drive-up window. Moreover, the lights of the business were extinguished at the time. There was also a rash of burglaries occurring that night involving pry bars and breaking windows. Also, the vehicle pulled away when the officer drove up, suggesting that appellant and his colleagues had the car's motor running. We believe these facts, taken as a whole, are sufficient to provide the officer with reasonable suspicion to believe that criminal activity was occurring or about to occur. *See Amorella v. State,* 554 S.W.2d 700, 702-03 (Tex. Crim. App. 1977) (finding reasonable suspicion when a car was parked next to a closed store late at night in a high crime area with the motor running and its trunk open, and the car drove away as the officer approached); *Cronin v. State,* No. 03-04-00266-CR, 2005 Tex. App. LEXIS 10450, at *15-16 (Tex. App.–Austin December 16, 2005, no pet.) (released for publication) (finding reasonable suspicion when the officer saw a pickup truck drive slowly out of the parking lot of a business that had been closed for several

3

hours, the truck appeared to come from behind the building, the officer had never seen vehicles in the parking lot after the restaurant was closed, it was late at night, and windows of a neighboring business had been broken five weeks earlier); *Holland v. State,* No. 05-04-00308-CR, 2004 Tex. App. LEXIS 7401, at *7-8 (Tex. App.–Dallas August 18, 2004, no pet.) (not designated for publication) (finding reasonable suspicion due to a vehicle being parked at a late hour at a closed shopping center and car wash where there had been burglaries and the behavior of the vehicle in driving forward and backward). Given these circumstances, the officer had reasonable suspicion that crime was afoot, and the trial court did not err in denying the motion to suppress.

*Sufficiency of the Evidence of Delinquent Conduct*

Appellant next argues that the evidence was factually insufficient to show that he was a participant in the burglary because no one saw his face, there was no forensic evidence, and no stolen property was found on his person or in the vehicle in which he was riding. We disagree.

Although juvenile proceedings are civil matters, the standard applicable in criminal matters is used to assess the sufficiency of the evidence underlying a finding that the juvenile engaged in deliquent conduct. *In re I.A.G.,* 297 S.W.3d 505, 507 (Tex. App.–Beaumont 2009, no pet.); *In re L.A.S.,* 135 S.W.3d 909, 913-14 (Tex. App.–Fort Worth 2004, no pet.); *In re M.C.L.,* 110 S.W.3d 591, 594 (Tex. App.–Austin 2003, no pet.). This is of import since the Court of Criminal Appeals recently negated the existence of a factual sufficiency review in criminal matters. *See Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Since then, other courts have held that only the legal sufficiency standard applies in juvenile proceedings. *In re M.C.S.,* 327 S.W.3d

4

802, 805 (Tex. App.–Fort Worth 2010, no pet.); *see also In re M.L.C,* No. 11-09-00081-CV, 2011 Tex. App. LEXIS 598, at *1 (Tex. App.–Eastland January 27, 2011, no pet.) (citing *M.C.S.* and applying only the standard applicable to questions of legal sufficiency). And, rather than amend the nature of his issue in his supplemental brief (that he filed after *Brooks*), appellant simply requested that we apply the civil factual sufficiency standard. This we decline to do given *Brooks, M.L.C.,* and *M.C.S.* and, therefore, find that appellant has waived his complaint.[2]

*Sufficiency of the Evidence to Support Disposition*

Finally, appellant contends the evidence is factually insufficient to support the trial court's order committing him to TYC. We again disagree.

Unlike findings that a juvenile engaged in delinquent conduct, disposition orders are subject to a factual sufficiency review, and in conducting that review, we apply the civil standard. *In re J.P.R.,* 95 S.W.3d 729, 731 (Tex. App.–Amarillo 2003, no pet.). That standard is discussed in *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998) and *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965), to which we refer the parties.

Next, to place a child outside of his home or to commit him to TYC, the factfinder must determine that 1) it is in the child's best interests, 2) reasonable efforts have been made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the home, and 3) the child cannot be provided

---

[2]Yet, even if the civil factual sufficiency test was applicable, our review of the record would lead us to conclude that the evidence of record satisfied it. It consisted of an officer identifying appellant's jacket, lettering thereon, and shoes as being those worn by one of the burglars captured on video, the similarity between the SUV used at the burglary and that in which appellant was found, the presence of a pry bar in the SUV with yellow on its tip akin to that found on the door of the burglarized business, and the presence of broken glass in the SUV. Whether to accept the credibility of the witnesses was for the jury to decide. However, the evidence of appellant's involvement in the burglary was neither weak nor overwhelmed by the totality of any contrary evidence.

the quality of care and level of supervision that it needs to meet the conditions of probation in the home. TEX. FAM. CODE ANN. §54.04(i)(1)(A), (B) & (C) (Vernon Supp. 2011). According to appellant, the evidence is factually insufficient to show that he cannot be provided the quality of care and level of supervision he needs in the home. Therefore, we address only that element since it was the only one briefed.

The record contains evidence that 1) during a three-year period, appellant was on probation twice and had eight referrals for acts of delinquent conduct, five of which were criminal offenses and the others for probation violations, 2) while on probation, appellant had fourteen positive tests for marijuana and one positive test for cocaine, 3) appellant did not complete substance abuse counseling, the Drug Court program, the Star IV program, or the managed care program, 4) appellant did complete and did well in programs with a secure, structured environment such as the Bridge program, a residential long-term treatment program, and the residential long-term aftercare program; however, he re-offended after completion of those programs, 5) appellant's program options in Lubbock County had been exhausted and juveniles do not generally benefit from repeating them, 6) appellant was a "follower" who was influenced by his "negative peers," drug use, and poor decision-making skills but improved in a structured environment, 7) appellant would be a poor influence on other youths undergoing treatment in various local programs if he was to attend them, 8) appellant's parents provided insufficient supervision when he was at home, 9) appellant was running out of time because he would soon be considered an adult, 10) the TYC had more resources to teach appellant proper social and adult living skills and to help with his academic

6

needs,[3] and 11) appellant continued to relapse into misbehavior when in his parent's custody, despite his parents having taking parenting classes. The foregoing is evidence from which the trial court could have found that the child cannot be provided the quality of care and supervision he needs at home to meet the conditions of probation. *See In re K.L.C.,* 972 S.W.2d 203, 206 (Tex. App.–Beaumont 1998, no pet.) (finding the evidence legally sufficient when there was no evidence that the juvenile's parents would supervise her as needed to meet the conditions of probation after failing to do so regarding home detention). Admittedly, there was evidence that appellant's mother had suffered and recovered from health problems and that his father modified his work schedule to enable him to be home on weekends. Yet, a factfinder need not accord those changes much weight when the juvenile is unwilling to be supervised, and the record more than supports the conclusion that appellant refuses to be supervised. Simply put, the evidence underlying the trial court's decision is not weak. Nor does the evidence suggesting that appellant could obtain the requisite supervision and care at home overwhelm that to the contrary. Accordingly, we cannot accept the contention that the trial court's finding lacks factually sufficient evidentiary support.

All issues raise by appellant are overruled and the judgment is affirmed.


Brian Quinn
Chief Justice

---

[3]Appellant was being schooled at home by his mother after he walked out of (and thus was expelled from) the alternative school or academy in which he was enrolled.

7