# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-11-00054-CV
---

**In the Matter of R. A.**

---
**FROM THE COUNTY COURT AT LAW NO. 1 OF BELL COUNTY**
**NO. 68,808, HONORABLE EDWARD S. JOHNSON, JUDGE PRESIDING**
---

## O P I N I O N

The trial court, sitting as a juvenile court, adjudicated R. A. delinquent after finding that he committed the offense of robbery. *See* Tex. Fam. Code Ann. §§ 51.03, 54.03 (West Supp. 2011); Tex. Penal Code Ann. § 29.02 (West 2011). The court committed R. A. to the Texas Youth Commission (TYC) for an indeterminate period not to exceed his nineteenth birthday. *See* Tex. Fam. Code Ann. § 54.04 (West Supp. 2011). In addition, the court ordered R. A.'s mother to pay court-appointed attorney's fees. On appeal, R. A. contends that (1) there is insufficient evidence to support the order requiring his mother to repay attorney's fees and (2) there is insufficient evidence that he committed robbery. We affirm the judgment.

## BACKGROUND

On September 10, 2010, officers with the Temple Police Department received a report of robbery by then sixteen-year-old R. A.[1] The complainant, D. H., was also sixteen years

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at the adjudication and disposition hearing in R. A.'s case.

old and attended school with R. A. According to D. H., he encountered R. A. near a shopping mall just before the start of the new school year in August 2010. D. H. had just purchased new shoes at the mall and eaten at an adjacent restaurant. As D. H. walked away from the restaurant wearing his new shoes, R. A. and a friend of R. A.'s rode toward him on bicycles. D. H. later testified that he believed R. A. would beat him up and that he told R. A., "I already know what y'all are going to do. Y'all are going to hit me and shove me from one to the other." D. H. explained that he had known R. A. for approximately ten years prior to the incident, and R. A. had picked on him or beaten him up at least three times in the past.

According to D. H., R. A. responded, "I won't hit you or nothing unless you give me your shoes." D. H. initially refused to give up his shoes, but R. A. repeated, "Just give us the shoes and I won't hit you. Just give me the shoes and I won't hit you." D. H. testified that he believed R. A. and his friend would hurt him if he did not hand over the shoes. He therefore took off the shoes and gave them to R. A., who put them on in place of his own. R. A. handed his old shoes to D. H., and then rode away with his friend.

On November 12, 2010, the State filed a petition alleging that R. A. had engaged in delinquent conduct. *See id.* § 53.04 (West 2008). The petition alleged that on or about August 31, 2010, R. A. "did then and there, in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place [D. H.] in fear of imminent bodily injury or death" and that such conduct violated section 29.02 of the penal code. On November 18, 2010, the trial court issued an order appointing counsel for R. A. on the basis that "[n]o parent has appeared in regard to this Cause after being duly notified on more than one occasion" and "the Juvenile-Respondent is unable to afford an attorney for himself at this time."

2

A bench trial was held on December 14, and R. A. pleaded false to the allegations in the petition. The State presented testimony from D. H., who testified about the events giving rise to his report to the police. D. H. also testified that he was reluctant to report R. A. to the police but did so because he wanted his shoes back and because his mother insisted it was the best way to force R. A. to leave him alone. Later, R. A.'s father gave money to D. H.'s mother in order to replace the shoes. As a result, D. H. stated that he wanted to drop the criminal charge against R. A. However, D. H. testified that he was on probation at the time and was told by his probation officer that dropping the charge would subject him to liability for making a false report, jeopardizing his probation. Testimony from both of R. A.'s parents corroborated that R. A.'s father repaid D. H.'s mother for the shoes and that D. H. offered to drop the robbery charge, but ultimately did not do so, claiming he changed his mind on account of his probation status.

The defense presented testimony from seventeen-year-old R. W., an eyewitness to the incident between R. A. and D. H. R. W. was a resident of the same neighborhood as R. A. and D. H., and testified that he saw them exchange shoes one day near the end of summer vacation. R. W. testified that the boys did not appear to be fighting when they gave each other their shoes, that he had previously seen them in the same place on multiple occasions, and that he believed they were friends. The defense also questioned two police officers, who testified that they investigated the case only by interviewing D. H. and did not try to confirm any of his claims, such as the date of the alleged offense or the past instances of R. A. antagonizing D. H. After hearing this testimony, the trial court orally announced its finding that the robbery allegation was supported by evidence beyond a reasonable doubt and therefore concluded that R. A. was a juvenile who had engaged in

3

delinquent conduct.[2]  *See* Tex. Fam. Code Ann. §§ 51.03 (defining delinquent conduct as "conduct . . . that violates a penal law of this state or of the United States punishable by imprisonment or confinement in jail."), 54.03 (providing for adjudication hearing to determine if juvenile engaged in delinquent conduct).

The trial court then proceeded to consider the disposition of R. A.'s case.  *See id.* § 54.04.  The State presented testimony and an exhibit regarding R. A.'s extensive disciplinary history in school and with Bell County Juvenile Probation.  The State also called R. A.'s mother, Deandrea to testify about her income.[3]  Deandrea stated that she received $1,200 per month in Social Security income, $480 of which was for R. A.  She also testified that she received approximately $208 per month in child support for R. A.  Afterward, the court entered an Order of Commitment including the following:

> IT IS THEREFORE CONSIDERED AND ADJUDGED BY THE COURT that [R. A.] be and is hereby committed to the care, custody, and control of the Texas Youth Commission . . . for an indeterminate period of time not to exceed his nineteenth birthday or until duly discharged . . . .
>
> IT IS FURTHER ORDERED that the parent of the Juvenile-Respondent, Deandrea [] pay attorney's fees incurred in this matter in the amount of $810.00, to be paid in monthly payments of $67.50 per month . . . .
>
> The Court finds that Deandrea [] is the parent responsible for supporting the Juvenile-Respondent.  The court further finds Deandrea [] is able to make payments for the support of the Juvenile-Respondent.
>
> IT IS THEREFORE ORDERED that Deandrea [] make payments to the Texas Youth Commission . . . in the amount of $500.00/mo. for the support of the

---

[2]  The court later formalized these findings in a judgment signed December 15, 2010.

[3]  We refer to R. A.'s mother by her first name in order to protect R. A.'s identity.

4

Juvenile-Respondent on the first day of each month that the Juvenile-Respondent is committed to the Texas Youth Commission.

R. A. now appeals, contending that the evidence is insufficient to support the finding that he committed robbery and the order for his mother to pay attorney's fees.

## STANDARD OF REVIEW

We apply the same standards of review to juvenile cases as to criminal cases. *See id.* § 54.03(f). In the criminal context, the factual-sufficiency standard has been eliminated, and the *Jackson v. Virginia* legal-sufficiency standard is "the only standard that a reviewing court should apply in determining whether the evidence is sufficient." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). Thus, we apply the *Jackson* standard for legal sufficiency of the evidence in a juvenile case. *See In re A.O.*, 342 S.W.3d 236, 239 (Tex. App.—Amarillo 2011, pet. denied); *In re M.C.S.*, 327 S.W.3d 802, 805 (Tex. App.—Fort Worth 2010, no pet.).

In reviewing a challenge to the legal sufficiency of evidence, we determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318. We must review all of the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner supporting the verdict. *Id.* at 318–19. In a bench trial, the trial court is the sole judge of the credibility of the witnesses and may accept or reject any part of their testimony. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1978).

**DISCUSSION**

**Repayment of attorney's fees**

In his first issue on appeal, R. A. claims that the trial court erred in requiring his mother to repay court-appointed attorney's fees. R. A. argues that, under the Texas Family Code provisions governing the appointment of counsel for juveniles, there was insufficient evidence to support the requirement for Deandrea to reimburse the county for payments to R. A.'s court-appointed attorney. *See* Tex. Fam. Code Ann. §§ 51.10, .101 (West 2008).

The State urges us to reject this argument for two reasons. First, the State asserts that R. A. has no standing to challenge the trial court's order as to attorney's fees because the order "was directed solely toward Appellant's parent, not him." Second, the State asserts that there was sufficient evidence to support the order. The trial court heard Deandrea testify about her income and made a finding that she was able to pay $500 per month for the support, maintenance, and education of R. A. As a result, the State contends, there was sufficient evidence for the court to require Deandrea to pay an additional $67.50 per month in attorney's fees.

We first consider whether R. A. has standing to challenge the trial court's order requiring his mother to repay attorney's fees. While a party is generally entitled to appellate review, a party generally may not complain on appeal of errors "that do not injuriously affect it or that merely affect the rights of others." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000); *Evans v. First Nat'l Bank of Bellville*, 946 S.W.2d 367, 372 (Tex. App.—Houston [14th Dist.] 1997, writ denied). However, section 56.01 of the family code expressly grants juveniles the right to appeal "an order entered under . . . Section 54.04 disposing of the case." Tex. Fam. Code Ann. § 56.01(c) (West

6

Supp. 2011). The requirement for R. A.'s mother to repay attorney's fees was contained in the court's Order of Commitment, which disposes of R. A.'s case under section 54.04. *See id.* § 54.04(d)(2). It therefore appears that R. A. may appeal on the basis of that requirement.

Moreover, we disagree with the State's suggestion that R. A.'s claim is barred by family code section 61.106. That section states, "The failure or inability of a person to perform an act or to provide a right or service listed under [subchapter C of chapter 61 of the family code] may not be used by the child or any party as a ground for . . . appeal." *Id.* § 61.106 (West 2008). However, subchapter C makes no mention of attorney's fees. *See id.* §§ 61.101–.107 (West 2008) (comprising "Subchapter C. Rights of Parents"). Rather, a trial court's authority to order a parent to repay attorney's fees is derived from section 61.054, in subchapter B of chapter 61 of the family code, and in section 51.10 of chapter 51. *See id.* §§ 51.10, 61.054 (West 2008). Accordingly, section 61.106 does not directly prohibit R. A.'s challenge to the order requiring repayment of attorney's fees.

However, we need not determine whether R. A. has standing to challenge the court's order as to attorney's fees. We conclude that, even if R. A. has standing, sufficient evidence supports the requirement for his mother to pay attorney's fees.

The family code states that juveniles are entitled to the assistance of counsel in adjudication and disposition hearings such as those at issue in this case. *See id.* §§ 51.10(b). Where a child is detained prior to such hearings and is not already represented by counsel, a juvenile court must either order the child's family to retain an attorney or else appoint one. *Id.* § 51.10(c). The court is required to appoint counsel for a child if "the court determines that the child's parent or other

person responsible for support of the child is financially unable to employ an attorney to represent the child" or "in any case in which it deems representation necessary to protect the interests of the child." *Id.* § 51.10(f)(2), (g).

In addition, the family code permits the court to order the child's family to reimburse the county for payments to appointed counsel. The relevant provisions state:

> (k) Subject to Chapter 61, the juvenile court may order the parent or other person responsible for support of the child to reimburse the county for payments the county made to counsel appointed to represent the child under Subsection (f) or (g). . . .
>
> (l) The court may not order payments under Subsection (k) that exceed the financial ability of the parent or other person responsible for support of the child to meet the payment schedule ordered by the court.

*Id.* § 51.10(k), (*l*).

R. A. argues that, under these provisions, a court's authority to order reimbursement "is expressly conditioned on the court determining that the defendant has the financial resources and ability to pay." Because the trial court "never addressed" Deandrea's ability to pay before it ordered her to reimburse the county for attorney's fees, R. A. concludes that there was insufficient evidence to support the order. *See Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010) (Adult criminal case holding that "defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees.").

To the extent that R. A. bases his insufficient-evidence claim on the lack of an express finding of Deandrea's ability to pay, we disagree. There is nothing in the family code requiring a

8

trial court to make any express finding that a parent has the financial ability to repay court-appointed attorney's fees. *Cf. Anderson v. State*, No. 03-09-000630-CR, 2010 Tex. App. LEXIS 5033, at \*6 (Tex. App.—Austin July 1, 2010, no pet.) (mem. op., not designated for publication) (noting that code of criminal procedure does not require trial court to make express finding that adult defendant is able to pay; it merely requires that record contain some evidence to that effect); *see also Perez v. State*, 280 S.W.3d 886, 887 (Tex. App.—Amarillo 2009, no pet.) (reversing order to repay attorney's fees because nothing in record showed defendant was able to pay).

Furthermore, in the present case, the record supports the trial court's order requiring Deandrea to repay attorney's fees. At the disposition hearing, Deandrea testified that she received a total of $1,408 in monthly income, $688 of which she received for the benefit of R. A. Subsequently, in addition to ordering Deandrea to pay $67.50 per month for R. A.'s attorney's fees, the court found that Deandrea could afford to pay $500 per month for R. A.'s support and ordered her to pay TYC accordingly. The total of these payments would be $567.50, which is $120.50 less than Deandrea had testified to receiving on R. A.'s behalf each month.

Having reviewed the record in the light most favorable to the trial court's order, we conclude that the trial court could have reasonably found that Deandrea had the financial ability to pay $67.50 per month to reimburse the county for payments to R. A.'s attorney. Accordingly, the evidence is sufficient to support the order requiring Deandrea to repay attorney's fees. *See Jackson*, 443 U.S. at 318–19; *Anderson*, 2010 Tex. App. LEXIS 5033 at \*6. We overrule R. A.'s first issue on appeal.

9

**Sufficiency of evidence of delinquent conduct**

In his second issue on appeal, R. A. claims that there was insufficient evidence to support the trial court's finding that he committed robbery. Specifically, R. A. challenges the sufficiency of the evidence regarding (1) whether a theft occurred, (2) the amount of the theft, and (3) whether he intentionally or knowingly threatened D. H. or placed him in fear of injury. R. A. notes that the only evidence that D. H. was threatened or placed in fear was D. H.'s own testimony that R. A. made statements such as, "I won't hit you or nothing unless you give me your shoes." R. A. concludes that "[t]his does not rise to the level necessary to uphold the Trial Court's finding of delinquent conduct."

The State responds, first, that the penalty for robbery does not depend on the stolen item's value and that R. A. therefore has no basis to complain of insufficient evidence of the value of the theft. *See* Tex. Penal Code Ann. § 29.02. The State further contends that D. H.'s testimony—in which he described his history of violent treatment by R. A., his belief that R. A. was going to hit him, his fear of being injured by R. A., and his desire for R. A. not to take his shoes—provided evidence of the elements of robbery, including theft. Accordingly, the State concludes, there was sufficient evidence for the trial court to adjudicate R. A. delinquent for committing robbery. We agree.

To prove that R. A. committed robbery, the State needed to prove that, with intent to obtain or maintain control of D. H.'s property, R. A. (1) intentionally, knowingly, or recklessly caused bodily injury to D. H. or (2) intentionally or knowingly threatened or placed D. H. in fear of imminent bodily injury or death. *Id.* The State also needed to prove that R. A. did this in the course

10

of committing theft, meaning he appropriated property with the intent to deprive D. H. of the property and without D. H.'s effective consent. *Id.* §§ 29.02, 31.03 (West 2011 & Supp. 2011).

D. H. testified that R. A. had picked on him and beaten him up multiple times in the past. Accordingly, he testified that he accused R. A. and his friend of planning "to hit [him] and shove [him] from one to the other" on the day in question. Further, D. H. testified that R. A. responded with threatening statements such as, "Just give me the shoes and I won't hit you." D. H. explained that R. A. ultimately took his new shoes against his wishes. This testimony indicated that R. A. intended to obtain D. H.'s shoes, that he threatened D. H. and was aware that D. H. was in fear of imminent bodily injury, and that he deprived D. H. of his shoes without D. H.'s consent. As the sole judge of the credibility of the witnesses, the trial court was free to accept this testimony as true. *See Johnson*, 571 S.W.2d at 173.

Viewing the evidence in the light most favorable to the trial court's finding and assuming the court resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner supporting that finding, we hold that the trial court could have rationally concluded that R. A. committed robbery. *See Jackson*, 443 U.S. at 318. Therefore, the evidence is legally sufficient to support the court's adjudication of delinquent conduct. *See id.* Accordingly, we overrule R. A.'s second issue on appeal.

## CONCLUSION

Because the evidence is legally sufficient to support the order for R. A.'s mother to repay court-appointed attorney's fees and the finding that R. A. committed robbery, we affirm the judgment of the trial court.

11

_____

Diane M. Henson, Justice

Before Chief Justices Jones, Justices Pemberton and Henson

Affirmed

Filed: July 20, 2012