02-11-394-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00394-CV

 

 


 
 
 In
 the Matter of C.N.
 
 
 §
  
 §
  
 §
  
 §
 
 
 From County Court at Law
 No. 1
  
 of
 Denton County (JV-2010-00636)
  
 March
 7, 2013
  
 Opinion
 by Chief Justice Livingston
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s order.  It is ordered that the order of the trial
court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Chief Justice Terrie Livingston

 

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-11-00394-CV

 

 


 
 
 In the Matter of C.N.
 
 


 

 

----------

FROM County
Court at Law No. 1 OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          In
three points, appellant C.N. contends that his trial counsel was ineffective,
that the trial court abused its discretion by admitting a video of a Child
Advocacy Center interview with the complainant and her sister, and that the
evidence is legally and factually insufficient to support the trial court’s finding
of “true” as to whether he engaged in delinquent conduct.  We affirm.

Sufficiency
of the Evidence

          In
his third point, C.N. challenges the legal and factual sufficiency of the
evidence to support the “true” finding as to whether he committed delinquent
conduct by committing the offense of aggravated sexual assault of a child by
digital penetration.  Although a juvenile proceeding is civil, we apply the
criminal sufficiency standard.  In re A.O., 342 S.W.3d 236, 239 (Tex. App.––Amarillo
2011, pet. denied); In re J.D.P., 85 S.W.3d 420, 422 (Tex. App.––Fort
Worth 2002, no pet.).  The Court of Criminal Appeals has concluded that the
sole standard to be used to determine sufficiency in criminal cases is Jackson
v. Virginia.  Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). 
Thus, we will review the evidence here using only the Jackson standard
of review.  See In re R.R., 373 S.W.3d 730, 734 (Tex. App.––Houston [14th
Dist.] 2012, pet. filed).

          In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Wise v.
State, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

          The
complainant, Theresa,[2] testified that she and
her sister rode home after school on the bus and that appellant sometimes stayed
at her home with them and their little brother until their mother came home. 
According to Theresa, when she was in third grade, appellant touched her on her
private, which is where she goes “pee from,” and he touched her underneath her underwear
and inside her private.  She tried to get away from appellant, but he locked
the door to the room they were in; Theresa cried for her sister Donna to open
the door with a hanger.  Once her sister got her out of the room, Theresa told
her what had happened.  Theresa’s sister corroborated her testimony about
Theresa’s being in the room with appellant and having to let her out, but she
did not remember the door being locked.  Theresa was twelve and Donna ten at
the time of trial.

          Appellant
contends the evidence is insufficient to prove aggravated sexual assault,
particularly that he digitally penetrated Theresa.  However, Theresa’s
testimony alone is sufficient to prove the offense.  See, e.g., Johnston
v. State, 230 S.W.3d 450, 455 (Tex. App.––Fort Worth 2007, no pet.).  Her
testimony about where appellant touched her, although couched in the language
of a young child, showed sufficient awareness to equate “inside” with
penetration.  See, e.g., Villalon v. State, 791 S.W.2d 130, 133–34
(Tex. Crim. App. 1990); Cantu v. State, 366 S.W.3d 771, 776 (Tex.
App.––Amarillo 2012, no pet.) (“The courts will give wide latitude to testimony
given by child victims of sexual abuse.”); cf. Mallet v. State, 9
S.W.3d 856, 863–64 (Tex. App.––Fort Worth 2000, no pet.) (concluding that the
victim’s testimony that the defendant’s penis went inside her “butt” or
“backside” was sufficient to prove that it penetrated her anus).

Accordingly,
we conclude and hold that the evidence is sufficient to support the trial
court’s finding of true.  See Tex. Penal Code Ann. § 22.021 (West Supp.
2012).  We overrule appellant’s third point.

Effectiveness
of Counsel

In
his first point, appellant contends that his counsel provided ineffective
assistance by agreeing to proceed on two charges in the same trial:  the
aggravated sexual assault charge involving Theresa and another aggravated
sexual assault charge involving her sister Donna.  Appellant also contends that
counsel should have objected to extraneous offense evidence that appellant had
touched Donna a second, separate time and to the State’s question asking the
investigating detective whether he thought the girls were credible.

Standard
of Review

          To
establish ineffective assistance of counsel, the appellant must show by a
preponderance of the evidence that his counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Davis v. State, 278 S.W.3d 346, 352 (Tex.
Crim. App. 2009).  In other words, for a claim of ineffective assistance of
counsel to succeed, the record must demonstrate both deficient performance by
counsel and prejudice suffered by the defendant.  Menefield v. State,
363 S.W.3d 591, 592 (Tex. Crim. App. 2012).  An ineffective-assistance claim
must be “firmly founded in the record” and “the record must affirmatively
demonstrate” the meritorious nature of the claim.  Id. (quoting Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

          In
evaluating the effectiveness of counsel under the deficient-performance prong,
we look to the totality of the representation and the particular circumstances
of each case.  Thompson, 9 S.W.3d at 813.  The issue is whether
counsel’s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland,
466 U.S. at 688–89, 104 S. Ct. at 2065.  Review of counsel’s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel’s conduct fell within a wide range of reasonable
representation.  Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App.
2005); Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

          Direct
appeal is usually an inadequate vehicle for raising an
ineffective-assistance-of-counsel claim because the record is generally
undeveloped.  Menefield, 363 S.W.3d at 592–93; Thompson, 9 S.W.3d
at 813.  This statement is true with regard to the deficient-performance prong
of the inquiry when counsel’s reasons for failing to do something do not appear
in the record.  Menefield, 363 S.W.3d at 593; Thompson, 9 S.W.3d
at 813.  To overcome the presumption of reasonable professional assistance,
“any allegation of ineffectiveness must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.”  Salinas,
163 S.W.3d at 740 (quoting Thompson, 9 S.W.3d at 813).  It is not
appropriate for an appellate court to simply infer ineffective assistance based
upon unclear portions of the record.  Mata v. State, 226 S.W.3d 425, 432
(Tex. Crim. App. 2007). Trial counsel “should ordinarily be afforded an
opportunity to explain his actions before being denounced as ineffective.”  Menefield,
363 S.W.3d at 593 (quoting Rylander v. State, 101 S.W.3d 107, 111 (Tex.
Crim. App. 2003)). If trial counsel is not given that opportunity, then the
appellate court should not find deficient performance unless the challenged conduct
was “so outrageous that no competent attorney would have engaged in it.”  Id.
(quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

The
prejudice prong of Strickland requires a showing that counsel’s errors
were so serious that they deprived the defendant of a fair trial, i.e., a trial
with a reliable result.  Strickland, 466 U.S. at 687, 104
S. Ct. at 2064.  In other words, appellant must show there is a reasonable
probability that, but for counsel’s unprofessional errors, the result of the
proceeding would have been different.  Id. at 694, 104 S. Ct. at
2068.  A reasonable probability is a probability sufficient to undermine
confidence in the outcome.  Id.  The ultimate focus of our inquiry must
be on the fundamental fairness of the proceeding in which the result is being
challenged.  Id. at 697, 104 S. Ct. at 2070.

Separate
trial

          Appellant
was charged with two sexual assault of a child offenses:  the State alleged
that he penetrated both Theresa and Donna.  The cases were set for the same
day.  When the trial court asked whether the cases would be tried together or
separately, counsel for appellant and the State agreed that they were trying
the cases together.  During voir dire one of the venire panel asked whether it
was fair to try both cases together; the prosecutor responded, without
objection, that counsel for both parties had decided it was fair.  Although the
jury convicted appellant of the offense against Theresa, it deadlocked on the
offense against Donna, and the trial court declared a mistrial.

          Appellant
contends that trial counsel’s agreement to consolidate the trials was
ineffective and prejudicial.  According to appellant, the State was able to emphasize
in its closing argument that the two girls together were more credible than one:

I guess there’s some idea that these
girls would have gotten together and created some kind of lie.  And when they
got together and made this lie, these young girls, one of them whose favorite
show is [Phineas] and Ferb and the other one who loves the Disney Channel too,
got together with [the investigating detective] back here.

          Donna
was a witness to the circumstances relevant to the offense alleged against
Theresa, i.e., she testified about the day Theresa was in the bedroom alone
with appellant.  Both alleged assaults took place under similar circumstances,
after school when the children were alone in the house.  Both girls were
interviewed at the Children’s Advocacy Center on the same day and were examined
by a sexual assault nurse examiner on the same day.

The
record is silent as to counsel’s reasons for agreeing to the consolidation.  In
addition to taking into account the similar facts and witnesses and the expediency
of holding one trial, counsel could have decided that a challenge to the
credibility of the investigators and competency of their investigation––the
primary defensive theory––and the credibility of the girls’ accounts of the
alleged incidents, would carry more weight if the two cases were tried
together.  Considering that the girls’ mother testified that she did not
believe the offenses occurred as alleged,[3] that there was confusion
as to the dates the offenses occurred, and that the two cases were investigated
together by CPS and law enforcement, this is a reasonable defensive strategy.  See,
e.g., Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)
(holding that when record is silent as to counsel’s reasons for the challenged
conduct, we must “assume a strategic motivation if any can possibly be
imagined”), cert. denied, 537 U.S. 1195 (2003); Bryant v. State,
282 S.W.3d 156, 171 (Tex. App.––Texarkana 2009, pet. ref’d).

          Accordingly,
we conclude and hold that appellant has not shown that his counsel was
ineffective for agreeing to try the cases together.

Appellant
also contends that counsel was ineffective for failing to object when the State
asked Detective Hinojosa, the Little Elm detective who investigated the
allegations, whether he believed the offenses occurred.  The record is also
silent as to counsel’s reasons for failing to object, but her strategy is clear
from the record.  During her cross-examination of the detective, she asked him
if he ever made mistakes, and he answered, “All the time.”  The prosecutor’s credibility
question was in the context of the detective’s explanation of why it took so
long to bring charges against appellant and why his investigation took so
long.  Counsel’s strategy of conceding the detective’s belief that he had
charged the correct person was reasonable in light of her defensive theory that
the detective was mistaken in his conclusion.  See Bryant, 282 S.W.3d at
171.  Thus, we conclude and hold that appellant has not shown that counsel was
ineffective for failing to object to this question and the detective’s answer.

          We
overrule appellant’s first point.

Video
of Outcry

          In
his second point, appellant contends that the trial court abused its discretion
by admitting Exhibit 14, which included video of Theresa’s and Donna’s
interviews at the Child Advocacy Center.  Appellant argues that Theresa’s
interview should not have been admitted because family code section 54.031 does
not allow the playing of a video of an outcry in addition to the outcry
witness’s testimony.  Tex. Fam. Code Ann. § 54.031 (West Supp. 2012).  He
also argues that neither of the interviews was admissible as a prior consistent
statement.  See Tex. R. Evid. 801(e)(1)(B).

Applicable
Facts

          The
State first attempted to admit the video interview of Theresa as outcry
evidence in conjunction with the testimony of the forensic interviewer.  The
trial court was initially reluctant to admit the video in addition to the
forensic interviewer’s testimony.  The trial court decided to take the matter
under advisement until it could review the video outside the jury’s presence.  The
trial court ruled that the video of the interview of Theresa was admissible “in
lieu of [the interviewer’s] testimony about those things that are subject to
the outcry statute.”  The court admonished the State not to play any part of
the video that was not related to “what happened.”  The State later offered the
video of Donna’s interview under the rule of optional completeness, which the
trial court denied.

On
the second day of trial, the State reoffered Exhibit 14, consisting of the
interviews of both girls.  According to the State, because the girls’ mother
testified on cross-examination that she believed something had happened to
Theresa, but not what the State had alleged, the State moved to admit the
entirety of both interviews as prior consistent statements to rebut an
allegation of recent fabrication.  The trial court ultimately admitted the
entirety of the interviews of both girls as prior consistent statements, and the
video was played for the jury after a nurse testified about her physical
examinations of the girls.

Family
Code Section 54.031

Regarding
the interview of Theresa, we find nothing in family code section 54.031 that
limits the use of a videorecording of an interview.  Section 54.031,
subsections (b) and (c) provide—in a juvenile prosecution for a sexual offense
involving a child victim under twelve—that

(b) This section
applies only to statements that describe the alleged violation that:

 

          (1) were
made by the child or person with a disability who is the alleged victim of the
violation;  and

 

          (2) were
made to the first person, 18 years of age or older, to whom the child or person
with a disability made a statement about the violation.

 

(c) A statement that
meets the requirements of Subsection (b) is not inadmissible because of the
hearsay rule if:

 

          (1) on or
before the 14th day before the date the hearing begins, the party intending to
offer the statement:

 

          (A)
notifies each other party of its intention to do so;

 

          (B)
provides each other party with the name of the witness through whom it intends
to offer the statement;  and

 

          (C)
provides each other party with a written summary of the statement.

 

Tex.
Fam. Code Ann. § 54.031(b), (c).  Thus, by its plain language, the statute
provides that such a statement is not hearsay; it does not address the format
in which the statement must be offered, only that it must be offered through a
specific, identified witness.  Id.  Here, the State offered the part of
Theresa’s video interview in which she described what appellant did to her in
lieu of having the interviewer testify about the statement.[4] 
We find nothing in the plain language of section 54.031 prohibiting such a
procedure.

Prior
Consistent Statements

          We
must review whether the remainder of Theresa’s interview and all of Donna’s
interview are admissible as prior consistent statements.

          The
content, tone, and tenor of defense cross-examination may “‘open the door’ to
the admissibility of a prior consistent statement by an express or implied
suggestion that the witness is fabricating her testimony in some relevant
respect.”  See Hammons v. State, 239 S.W.3d 798, 808 (Tex. Crim. App. 2007). 
Because “much of the force of cross-examination depends upon the tone and tenor
of the questioning, combined with the cross-examiner’s demeanor, facial
expressions, pregnant pauses, and other nonverbal cues,” a reviewing court
should focus on “the ‘purpose of the impeaching party, the surrounding
circumstances, and the interpretation put on them by the [trial] court.’”  Id. 
We may also consider clues from the voir dire, opening statements, and closing
arguments.  Id.  We must decide, “[f]rom the totality of the
questioning, giving deference to the trial judge’s assessment of tone, tenor,
and demeanor, could a reasonable trial judge conclude that the cross-examiner
is mounting a charge of recent fabrication or improper motive?”  Id. at
808–09.  For a prior consistent statement to be admissible, “the prior
consistent statement must be made prior to the time that the supposed motive to
falsify arose.”  Id. at 804.

          The
prosecutor began her opening statement by saying that “[t]his is a story about
little girls that share secrets and things that are secretive happening behind
locked doors.  Today you’re going to hear from . . . a number of different
people.  You’re going to hear that [Donna] told her secret . . . a couple
different times.”  In her opening statement, defense counsel said, “The real
secret here is that you’re going to be the judges of the credibility of who’s
telling the truth, who’s not telling the truth.”  On cross-examination of the
girls’ mother, the State’s first witness, the defense elicited testimony that the
mother did not believe “that the secret is true.”  But on redirect, the girls’
mother testified that the girls told her the same day that appellant had done
“something sexual” to them; she just did not believe he had penetrated them. 
She thought that she and appellant’s mother had taken care of things by making
sure he never came back over to the house alone with the girls.  Defense
counsel’s cross-examination of Theresa and Donna consisted of asking them to
verify details unrelated to the specific allegations, such as who was present
at the house the day of the alleged assaults and whether Donna used a hanger to
unlock the door.  The girls’ testimony was inconsistent in this regard.

          During
closing argument, appellant’s counsel again stressed the jury’s role in
determining credibility, pointing out discrepancies in the alleged dates and
the fact that the girls’ mother did not believe their secret.  Counsel also
emphasized the testimony about various cousins who had lived in the home with
the girls.  Counsel argued specifically that the girls’ testimony was a result
of the facts not being thoroughly and accurately investigated and that the
forensic interviewer asked leading questions during the interviews, “creating a
story . . . and that’s when [appellant’s] name got filled in the blank,
basically, of a cousin that fondled two girls.”

          Here,
it is difficult to tell whether counsel’s demeanor and questioning suggested to
the jury that the girls fabricated their testimony before or after the
interviews.  Counsel clearly intimated that the girls were coached during the
interviews into saying that appellant, as opposed to another person, assaulted
them.  It appears that counsel’s defense as a whole was directed at showing
that the girls were mistaken about the details of events, including when they
occurred, what exactly happened, and who did it.  Counsel appeared to be
attacking what the girls said in the interviews as well as at trial. 
Accordingly, it does not appear that counsel was suggesting that any
fabrication occurred after the interviews.

The
girls’ mother testified that the girls had told her appellant did “something sexual”
to them and that she and appellant’s mother took care of it.  This appears to
have happened fairly close in time to the assault of Theresa and the alleged
assault of Donna.  Several months later, Donna told one of her friends “her
secret” about appellant; that friend told her own mother, who went to Donna’s
teacher.  Donna’s teacher called CPS, who arranged the interviews, in which
both girls stated that appellant assaulted them.  Thus, the interviews occurred
after both Theresa and Donna had made outcries, specifically about
appellant.  Accordingly, we conclude and hold that the trial court abused its
discretion by admitting the part of Theresa’s interview not related to her
outcry and the entirety of Donna’s interview.[5]  See id. at
808–09.

          However,
after viewing the interviews in light of the entire record, we conclude and
hold that the error was harmless.  Donna’s answers during the interview are
more descriptive than her trial testimony; however, other evidence, such as the
nurse examiner’s notes and appellant’s social history provided many of the same
details.  Additionally, the primary details regarding appellant as the
perpetrator, that he penetrated both girls, and that they told their friends
and their mother are the same as in the interviews.  It is well-settled that the
improper admission of evidence does not constitute reversible error if the same
facts are proved by other properly admitted evidence, especially when the
improperly admitted evidence essentially repeats victim testimony.  See Brooks
v. State, 990 S.W.2d 278, 287 (Tex. Crim. App.), cert. denied, 528
U.S. 956 (1999); Dunn v. State, 125 S.W.3d 610, 615 (Tex.
App.––Texarkana 2003, no pet.); Matz v. State, 21 S.W.3d 911, 912 (Tex. App.––Fort
Worth 2000, pet. ref’d).  Thus, we overrule appellant’s second point.

Conclusion

          Having
overruled appellant’s three points, we affirm the trial court’s order
adjudicating him delinquent.

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

 

DELIVERED: 
March 7, 2013









[1]See Tex. R. App. P. 47.4.





[2]We will refer to the
complainant and her sister using pseudonyms.  See Tex. R. App. P. 9.8
cmt.





[3]Although she testified
that she believed something sexual happened, which caused her to prohibit
appellant from staying alone with the girls, she said she did not believe the
details as alleged.





[4]Appellant has not
challenged the trial court’s determination that the statement is admissible as
an outcry because Theresa’s initial statement to her mother did not go into
detail.





[5]We note that the State has
not addressed the merits of the evidentiary issues, instead addressing only
harm.