

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-15-00148-CV

___

IN THE MATTER OF B. S.

___

On Appeal from the 98th District Court
Travis County, Texas
Trial Court No. JV 34724, Honorable Ami Larson, Presiding

___

November 17, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Through two issues, juvenile appellant B.S. challenges the sufficiency of the evidence supporting the trial court's judgment that he engaged in delinquent conduct by committing the offense of harassment of a public servant.[1] Finding the evidence sufficient, we will affirm the judgment of the trial court.

Background

While on patrol in a marked vehicle, a uniformed Austin police officer received a dispatched call for assistance in locating J.M. a juvenile escapee from the county

___

[1] TEX. PENAL CODE ANN. § 22.11(a)(2) (West 2011).

juvenile detention center. The call came after J.M.'s mother reported seeing her son within the past five minutes in the area of an apartment complex.

The officer spotted a juvenile he believed might be J.M. In fact, it was B.S. B.S. refused to provide his name when the officer asked. The officer attempted to handcuff and frisk B.S. As he placed his hand on B.S.'s arm, B.S. jerked away from the officer's grasp and attempted to pull away.

A second officer arrived and the two officers took B.S. to the ground. On the ground, B.S. continued resisting and struggling. When a third officer arrived B.S. was subdued, handcuffed, and frisked.

Officers noticed B.S.'s nose was bleeding. The first officer told B.S. he was under arrest for resisting the search. B.S. responded with profanity and racial slurs directed at the officer and other officers. A group of B.S.'s friends and apartment-complex residents gathered at the location. With concern for officer safety, and because EMS personnel will not respond to an unsecure location, officers placed B.S. in a patrol vehicle and transported him about a half-block away to a youth center.

At the youth center, EMS personnel examined B.S. while the officer stood some five to ten feet away. As the EMS evaluation concluded, B.S. looked directly at the officer and spit saliva and blood onto the officer's uniform, face, and arms. Afterward, B.S. remarked, "Hoped you liked that, f - - - a - - cop." The officer then went to a local hospital for "blood-exposure precautions."

The State filed a petition alleging B.S. engaged in delinquent conduct by committing the offenses of harassment of a public servant and resisting arrest. At a

contested adjudication hearing, tried to the bench, the court found the resisting-arrest allegation not true but it found the harassment of a public servant charge true. At the disposition hearing, the court placed B.S. under an order of probation.

Analysis

Through his first issue, B.S. argues the State's evidence was legally insufficient because the State failed to prove that the officer was lawfully discharging an official duty at the time B.S. spit saliva on him.

When a juvenile appellant complains the evidence is insufficient to support the adjudication of delinquency, an appellate court applies the criminal standard of review. *In re R.A.,* No. 03-11-00054-CV, 2012 Tex. App. LEXIS 5909, at *7 (Tex. App.—Austin July 20, 2012, no pet.). In evaluating the sufficiency of the evidence supporting a conviction, the reviewing court's inquiry is "whether, after viewing the evidence in a light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Garcia v. State,* 367 S.W.3d 683, 686-87 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). It is the role of the trier of fact to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from that evidence. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson,* 443 U.S. at 318-19 (1979)). The trier of fact is the sole judge of the credibility of witnesses and the weight, if any, to be given to their testimony. *Garcia,* 367 S.W.3d at 686-87; *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

As alleged in the State's petition, the elements of harassment of a public servant are that B.S. "with the intent to assault, harass, or alarm [the officer], cause the said [officer] (sic) [B.S.] knows to be a public servant to contact the blood and saliva of [B.S.] while the said [officer] is lawfully discharging an official duty and in retaliation and on account of an exercise of the said [officer's] official power and performance of an official duty." TEX. PENAL CODE ANN. § 22.11(a)(2).

An officer lawfully discharges his duties if the officer is "acting within his capacity as a peace officer." *Johnson v. State,* 172 S.W.3d 6, 11 (Tex. App.—Austin 2005, pet. refused) (quoting *Guerra v. State,* 771 S.W.2d 453, 461 (Tex. Crim. App. 1988); *Hughes v. State,* 897 S.W.2d 285, 298 (Tex. Crim. App. 1994)). Determining whether an officer acted within his capacity as a peace officer, we look to the details of the encounter, including whether the officer was in uniform, on duty, and whether he was on regular patrol at the time of the occurrence. *Johnson,* 172 S.W.3d at 11. An officer is lawfully discharging his duties if he is not "criminally or tortiously abusing his office as a public servant." *Id.*; *Hall v. State*, 158 S.W.3d 470, 474-75 (Tex. Crim. App. 2005) ("the 'lawful discharge' of official duties in this context means that the public servant is not criminally or tortiously abusing his office as a public servant by acts of, for example, 'official oppression' or 'violations of the civil rights of a person in custody' or the use of unlawful, unjustified force") (footnotes omitted)).

B.S. spends much of his argument under this issue analyzing the detention and its rationale, and the officer's use of force. He concludes the use of force was not justified and "[t]he incident snowballed into an assault of [B.S.]." As such, he continues,

4

actions of the officer were not a lawful discharge of official duty. We find no merit to this assessment.

B.S. chose not to testify at the adjudication hearing and the trial court found the officer's testimony credible. The officer's testimony and other evidence showed the officer was in uniform in a marked patrol unit investigating a call from dispatch of an escaped juvenile detainee in the area. Spotting B.S. the officer attempted to make contact but B.S. refused to provide his name. B.S. resisted the officer's attempt to handcuff and frisk him. B.S. was subdued only after a second and third officer arrived. In the occurrence, B.S. sustained a bloody nose. The officer then transported B.S. to the parking lot of a youth center for emergency medical evaluation of B.S. As the EMS worker concluded the examination, and while the officer stood beside his patrol vehicle, B.S. spat blood and saliva on the officer. We find a reasonable trier of fact could have found beyond a reasonable doubt that at the time B.S. spat on the officer, the officer was lawfully discharging his official duty. *See Hughes,* 897 S.W.2d at 298 ("Whether or not [a trooper's] stop of [the defendant] was constitutionally reasonable is not relevant to determining if [the trooper] was acting in the lawful discharge of his duties. . . . The record reflects that [the trooper] was acting within his capacity as a peace officer at the time of the offense. He was on duty, in uniform and patrolling Interstate 10 with his partner when they heard and responded to the dispatcher's report" (quotation marks and citation omitted)); *see also Guerra,* 771 S.W.2d at 461 (similar analysis). B.S.'s first issue is overruled

Through his second issue B.S. argues the State's evidence was factually insufficient to support his adjudication for harassment of a public servant because the

5

State failed to prove that the officer was lawfully discharging an official duty at the time B.S. spit saliva on him. Appellate courts are authorized to conduct a factual sufficiency review only if the burden of proof is less than beyond a reasonable doubt. *Moon v. State,* 451 S.W.3d 28, 45 (Tex. Crim. App. 2014) (citing *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002)). In a juvenile adjudication hearing, the State's burden requires proof beyond a reasonable doubt. *Id.* (citing TEX. FAM. CODE ANN. § 54.30(f)). Therefore, under the criminal standard we apply for measuring the sufficiency of evidence supporting a juvenile adjudication, the strength of the evidence is not gauged by a separate factual sufficiency standard. *In re R.A.,* 2012 Tex. App. LEXIS 5909, at *7 ("In the criminal context, the factual-sufficiency standard has been eliminated, and the *Jackson v. Virginia* legal-sufficiency standard is 'the only standard that a reviewing court should apply in determining whether the evidence is sufficient'"); *In re A.O.,* 342 S.W.3d 236, 239 (Tex. App.—Amarillo 2011, pet. refused) (refusing in light of *Brooks v. State,* to apply a factual sufficiency standard for reviewing a finding that a juvenile engaged in delinquent conduct). B.S.'s second issue is overruled.

## Conclusion

Having overruled B.S.'s two issues, we affirm the judgment of the trial court.

James T. Campbell<br>
Justice